Good morning, may it please the court. I've reserved three minutes for rebuttal. I believe there are two primary issues on appeal. The first is whether the Dormant Commerce Clause applies to cannabis, and the second being the preliminary injunction factors, primarily the balance of harms and delay. Regarding the Dormant Commerce Clause, I think it's well briefed by both sides. I won't believe it. Speak right into the mic, please. Thank you, Your Honor. You can raise it up a little bit if you want to. You can raise the whole podium. I think I'm okay, unless this isn't picking me up. I had mentioned I think there are two primary issues today. The first being whether the Dormant Commerce Clause applies to cannabis, and the second being the preliminary injunction factors, primarily the balance of harms and delay. Whether the Dormant Commerce Clause applies to cannabis I think is well briefed, and I'm not going to belabor that. Other than I just want to point out that the Controlled Substances Act gives the Attorney General the authority to determine whether drugs are on these schedules. And that's in 21 U.S.C. Section 811, and that's briefed on page 20 of the reply. So that when the Congress affirmed the Attorney General, that was more than just an act of prosecutorial discretion on whether he prosecutes cannabis or not. I believe that shows Congress's intent through the CSA and through the power they gave to the Attorney General to treat cannabis as, to acknowledge that cannabis is a national market. I'd like to move on to the injunction factors at this point. And I'd like to address timing because the court found that we delayed, and the respondents have said that as well. This program was created on September 12th of 2023. Nothing in the program itself indicates that they are going to favor New Yorkers. The cannabis conviction is not capitalized, so you don't know to go and look for a definition of that. It wasn't until October of 2023 when the state set forth its mock-up of the application program that it was clear that the cannabis conviction had to be under New York law. So between October and December 18th, in about two months, the appellants formed, organized, applied, and brought this lawsuit. And I think the government is not giving enough credit to the work it takes to put these companies together, to form them, to organize them, to find the shareholders and form them. So that was, in my view, remarkable speed that they acted with and shows no delay whatsoever. I believe the statute of limitations is something like two years. But in any event, even if in the November and so on you were out of it, you are still eligible to apply for the December, aren't you? They did apply in December. It was one application program, and then it was divided into two batches by the state. But so that, whatever happens in that, you're still there. Correct. But to be making sure we, I understand, but you were not really in a position to apply for the November pool. You had not yet, you weren't ready, able, and willing to apply for that pool. I don't have. The LLC had not been formed yet. The LLC was formed, I believe, in November because there were going to be a different group of shareholders at one point, but that dropped out and it changed. The final company, as they are with appellants, were formed in early December. But I believe the LLC itself was formed in November, to answer your question, but that was not the group that appears here as appellants. So isn't the issue that in terms of constitutional standing, your group has standing because you wouldn't be hurt? But the question is really whether a prudential rightness, whether we ought to take it up now or whether we ought to wait until things go further in New York. Am I wrong that that's really cutting aside from particular things, but that's really the question for us? I don't believe so, Your Honor, because we've already been harmed. We have been excluded from the program for extra priority, regardless of what happens with the licenses. And this was an issue in the Verisight I case in the Western District, the prior case, with a different plaintiff. But the court found that even if you could prove that you would never receive a license, you still have the injury, a constitutional injury, being excluded from the program. Well, but that's why there is standing. I'm saying standing exists, but we have a certain amount of discretion of deciding when we want to decide something. And I'm not saying that we shouldn't decide now. I'm just saying isn't that much of what they're saying? There was a Seventh Circuit case, Finch, I think Finch v. Trito. In that case, the plaintiffs did not apply. They came two years after the application program when the licenses had been awarded through a lottery. And the court concluded that you still had standing because they could have applied. However, the court, as a matter of balancing harms, they said that they had waited too long. They had not, you know, they waited too long. This is different because we were harmed. It is different from where a case like in the Seventh Circuit, Finch was saying, well, if I had applied, I would have been harmed. We are harmed as we stand here today, regardless of what happens with the licenses. Is there not a prior question here? Because just a couple of days ago, the New York State Court enjoined this law, insofar as it created the category of application that your clients made. So basically, under that injunction, you would have to reapply. And your application is nothing now that raises the prudential rightness issue that Judge Calabresi raised, but perhaps in a more powerful form. Your Honor, that's a preliminary injunction. I don't know what's going to happen with that. And I don't know what action the state is going to take to remedy that. They could codify the provisional licenses. There are a lot of possibilities here. And I don't want this suit to be tossed on a preliminary injunction that we don't know what's going to happen. It's not even been appealed yet. Your Honor. In any event, there are people, there are potential licensees in the December pool that have already found premises, have premises, and there are applicants that don't have premises. Am I right about that? Well, the November round required property. So I'm guessing all of them at one point had it. When they got a low lottery number, I'm sure a lot of them released the properties. So that's part of why the provisional was created, so those people could come back in. As Your Honor pointed out, the provisionals are subject to preliminary injunction. On December batch, the state's in a better position to answer that than I am. I'd be surprised if they got property, because my understanding is they have not begun reviewing them yet. But, again, I don't have the information on that. I just know December was not required to obtain property. My experience in this industry, which is pretty extensive, is you'd be crazy to go and rent property when you don't need it. Can I just ask? You said it's well briefed, but could you articulate your position about the Dormant Commerce Clause? Because I'm having difficulty seeing how the national cannabis market could be entitled to the protection of that clause when Congress has clearly stated – why hasn't Congress clearly stated its intention that the second market shouldn't exist? Sure, Your Honor. Congress's power under the Commerce Clause is separate from the prohibition on powers to the states under the Dormant Commerce Clause. The federal government exercising its power under the Commerce Clause to make a market illegal is within the Congress's ability. The states do not have the ability to balkanize on their own accord without the Congress's permission. The states have – in this case, it is not the state making a matter illegal. The state has affirmatively granted licenses, and they are reserving those economic benefits for their own citizens, which is not permitted under the Dormant Commerce Clause. And as the First Circuit pointed out, if they wanted to support what the federal government is doing, they could have made cannabis illegal, as they did for decades. What they've done is they've made it legal but reserved the benefit for their own citizens. Could Congress or perhaps even the drug regulators say the Dormant Commerce Clause should not apply to this? Congress absolutely can. The drug regulators are under the executive branch. They do not have the ability to – Yeah, that's not – but there's no doubt that in terms of the inertia, Congress could overcome the inertia in one direction if it chose to do it with respect to the Commerce Clause. That has actually been discussed, but there's no movement on it. So, yes, when the federal government makes cannabis illegal, they could choose to exempt it from the Dormant Commerce Clause. So in that sense, illegality or not doesn't make any difference. They have the same power to say one thing or the other as they choose. It's just we decide under the Dormant Commerce Clause where one starts from, whether you have to give permission or if you give prohibition. I agree with you, Your Honor, that the Congress has the ability to exempt markets from the Dormant Commerce Clause should they choose to. Thank you. May it please the Court, Alexandria Twynam on behalf of Defendants Appellees. Before turning to why the Dormant Commerce Clause does not apply here, I'd like to begin where this Court began its questioning of Plaintiff's Counsel. This case is not presently ripe, and this Court should not take the action of making a decision given the facts that are presently unknown. In particular, the State Court preliminary injunction that was put in place last week prevents defendants from processing Plaintiff's applications, as well as a number of applications on the November queue that must be resolved under current policy before getting to the December queue. Yes, but haven't these people been burned already? So that in terms of constitutional standing, it's there. And so the real issue for us is whether this is an appropriate time to speak about an issue that is going to come up. It has come up in the First Circuit, has come up in district courts, and is coming up all over, which is the key question of whether the Dormant Commerce Clause applies. I would disagree with your initial premise, Your Honor, that plaintiffs have already been hurt. Plaintiffs applied for extra priority. We know exactly where they fit when given extra priority. They got their number in three times, and the highest numbers that they received respectively were 816 and 949, which means the only constitutional harm that plaintiffs are at risk of suffering is when OCM gets to application number 816, if it says, no, you shouldn't have gotten extra priority. We're pushing you down to your second number. That is when their constitutional injury at this point will occur. And at this point, there is no reason to believe that that is coming in the near future, not only because of the injury. Do we know, just on the way it's going to work, is that what's going to happen, that they would go to their second number and then their last number as opposed to rerunning the game? My understanding is that they would go down to their second number, in part because there may be plenty of other individuals on the list, rather than rerunning it over and over. But in terms of trying to set up a business and doing those things, doesn't it matter to know whether you are in the first priority or the second, and when they're doing this, that you have a substantial chance of losing out? Let's forget marijuana or any of these things. If this were who gets to build a stadium, who gets to do something else, even though there aren't, wouldn't we say, well, of course these people have been hurt? I don't know that plaintiffs would have standing to assert that kind of injury, in part because they did apply. They applied and they selected extra priority. So it is not clear to me that they suffered any cognizable injury, as a result of some fear about whether or not they would get the extra priority. Perhaps someone who never applied. It's not fear of whether they would get that extra priority. The knowledge that they are doing this with a greater risk than others have of losing out. I mean, you know, if you say to people, I'm running an admissions program at a law school, and you, for certain reasons, have a lower chance than somebody else has. Now, you make it in any way. Good heavens, of course we say that the people who are in that position have standing. Indeed, they've won some recent cases. I don't think plaintiffs have asserted that type of injury, but even if they had, I don't think it would be redressable in this case. They've only sought prospective relief. They've not sought sort of anything, any damages based on their concern about that sort of past action. So I do think for that reason it would not be redressable. You're saying that it shouldn't matter to them what happens with the November queue. Correct. It does. If the November queue, if they all get their licenses, there may be none left at all for the December queue. You actually argue that in your brief. That's true, but that has nothing to do with how the November queue is ordered and whether or not that ordering violates the Dormant Commerce Clause. If the November queue violates the Dormant Commerce Clause, for example, then it can't function, in which case these subplaintiffs are now in a completely different position and maybe a very advantageous one. But the constitutional question would be how that list is ordered. Imagine, for example, the extra priority were taken out. The same 1,700 businesses would still end up in some order on that list and would still all be considered before plaintiffs. So there is no Dormant Commerce Clause issue around the November queue. Aren't they challenging the November queue? Only the extra priority within the November queue. Not the fact that the November queue exists at all. That is, they have not argued that that list existing is a Dormant Commerce Clause violation. Nor could they. That did not discriminate between in-state and out-of-state residents. It was simply based on whether a location had already been secured. You're saying that this law that's now under attack is not designed to discriminate against out-of-state residents. Correct. But, of course, the first iteration of this was the CARD program, which did. I mean, it was a naked discrimination against non-New Yorkers, and it was enjoined. And you settled it. So why shouldn't we now look with a culled eye on your arguments concerning this arrangement, which might be viewed as just an effort to achieve by hook or crook what the CARD program tried to do and could not? Two arguments, Your Honor. The first is that the CARD program actually came after the adult use program had been set out at least by statute and included different provisions. For example, a provision that an individual had to have some sort of interest in the state of New York, such as residency or owned property here. That provision does not exist in this program. I understand. I'm just saying the state legislature pretty obviously intends these dispensaries to be a program that benefits New Yorkers. And then the question is whether all of the machinations built into this statute are simply a proxy or a way to achieve by hook or crook what the CARD program was enjoined from doing. I don't think the court needs to make that kind of inquiry or assumption about the purpose of the cannabis law because the cannabis law has an actual provision that indicates what its purpose is. And its purpose was to ameliorate the effects on individuals who had previously suffered conviction under New York law. But the second thing I would say about not looking at the- The CARD program had that same effect. But you can have both. And what happens if you have a goal of restorative justice on the one hand, but on the same hand, you have an effort to discriminate against out-of-staters who may also need restorative justice? So two points on that, Your Honor. The first is that I think using VeriCite I as sort of a guide here is improper or incorrect maybe because the applicability of the Dormant Commerce Clause was never raised by the parties. So that issue sort of was never decided. The second reason that I would say that that's sort of not applicable is because the program, the adult use program, does not have anything sort of on its face or in its purpose that indicates that it would treat someone with a conviction under New York law differently, whether they lived in the state or out of the state. That then becomes a question of whether we look at it, assuming the Dormant Commerce Clause applies, under the first treatment of cases of whether it's a direct discrimination or whether it violates PIC. And that's a separate question, but they're there. Right. That's only after we decide whether the Dormant Commerce Clause applies to this kind of situation. Absolutely correct, Your Honor. And the Dormant Commerce Clause does not apply. The Supreme Court recognized in General Motors Corp v. Tracy that the fundamental objective of the Dormant Commerce Clause is preserving a national market for competition. In the Controlled Substances Act, Congress made clear that there is to be no market for competition in the area of marijuana, that it wanted all of it to be forbidden. And the Supreme Court recognized this in Gonzales v. Raich, concluding that the federal interest... Look, if the point of the Dormant Commerce Clause is to say whether Congress must give permission to have local decision or whether Congress has to prohibit the favoring, and it's just a matter of inertia, which way you start, then does it really matter whether something is illegal but allowed and is in commerce when the question is, is this something that we want Congress to say yes to or something that we want Congress to say no to? And in that respect, what's the difference between marijuana and almost anything else in which there is some kind of national market, whether we like it or not? I don't think the question is whether we want Congress to say something. It's whether Congress has said something. And in the Controlled Substances Act, Congress made findings that it was not in the national interest for there to be an interstate market in any of the controlled substances. Just like the basis in Prudential Insurance Company v. Benjamin where the Supreme Court said the McCarran Act had spoken clearly, here too the same findings exist. You mean that when they have kept it as being illegal, they were also thinking about the national market rather than a very different thing of saying we want to discourage people, whether locally or not, from using marijuana, which is a different thing. I think they absolutely wanted to discourage people from marijuana, but primarily they wanted to discourage an interstate market. And here, that requires us to find that the Dormant Commerce Clause does not apply. And in fact, that the laws that New York has passed are consistent with that sort of inapplicability and with ensuring that a national market does not apply to whatever degree they are protectionist. Unless there are further questions, we'd rest on our brief. Yeah, I'll be very brief. Regarding the right to participate in national cannabis market, that is not what this case is about. This is about the constitutional prohibition on economic protections and by the states, which New York is engaging in. There was a case, and I believe it's either Tennessee Whiskey or Granholm, where they talked about alcohol and the 21st Amendment. And the court said the ability to regulate alcohol and about whether a state can prohibit alcohol and set its own rules is about the health of the public. It's not about protecting profits for state residents. And just to go to the state court injunction. If that state court injunction is reversed, there won't be time to restart this case and to get all the way up here back to the Court of Appeal, which is where we know it's going to head based on the district court ruling previously in this case. So I'd ask this court to please not dismiss this case based on a preliminary injunction in a state court that has not been appealed yet. I realize I went a little over earlier to answer the question. So the last thing I'll say is our respondents said that part of this case is a rape because we're seeking prospective relief, not damages or past acts. We're not allowed to seek damages because of the 11th Amendment. If we could have, we wouldn't. So that's that. Again, I know I was about two minutes over. You're arguing that the effect of this law is to favor New Yorkers.  Which seems pretty much to be so. But the main thrust of it seems to be what people call restorative justice. That is to say, people who were victims of what the state now repents of. That is to say, punishing people for something that the more enlightened or recently enlightened members of the legislature believe to be inoffensive, are restored to the position that they were in before. So doesn't it make sense to limit that to people who were convicted in New York? And to say, you may have been convicted in New York, but you may have been here from California if you were. It applies to you in California. You move to California. You move to anywhere. And we're not going to discriminate against you based on where you live now. The Dormant Commerce Clause test is clear that you cannot discriminate in commerce unless it is serving a local purpose that cannot be remedied by a non-discriminatory. And how can the restorative justice purpose be served otherwise than how this law does it? There are a million ways they could do tax rebates. Well, I mean, you're there, so we have time. Sure, they could do tax rebates. They could do lower admissions to college. They could do waived tuitions for college. There is no reason why a past criminal conviction has to be tied to business licenses. Those are two separate issues. In fact, the panel earlier brought up the affirmative action. The affirmative action laws say that a preference in licensing has to be tied to a past violation in the same area of licensing. What we're really asking is, assuming the Dormant Commerce Clause applies generally, isn't this a special situation where the interest of the state is so great that it overcomes the Dormant Commerce Clause? That is said in the cases. It's rarely found that the argument that somehow our own unjust criminal system can only be corrected by something locally is something that one can face. Is it enough for New York to say, even though this is local, it has also happened in others, and so we'll give the same advantage to anyone who has suffered? Or do you have the right to treat its own treatment of marijuana in the past? The state has changed its position on its past criminal laws. That is a separate issue from licensing. Those are two wholly unrelated things that the state has tried to connect in order to prefer its own people. As I mentioned, there are a lot of ways they could address their own past actions, their criminal code, that aren't tied to licensing. Also, there was a case in Maryland in the state courts where they found that, and this had to do with the addresses, not the criminal conviction, but they found it's over-inclusive and under-inclusive in that you're assuming that everybody who had a conviction was equally harmed, which may not be the case, and then you're under-inclusive because what you're doing is you're taking a few relatively small number of people who had the conviction, and you're giving a very valuable license and doing nothing for the other people. They could have set a program, say tax rebates or a million other things that would affect people more broadly, rather than just the lucky few who literally win a lottery on this issue.  Thank you. Thank you. And we'll take the matter under advisement.